**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| TITANIDE VENTURES, LLC, | ) | Case No.: 4:12-cv-160-RAS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BOX, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT BOX, INC.'S MOTION TO TRANSFER VENUE TO THE NORTHERN
DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................1

II. STATEMENT OF FACTS .....................................................................................2

    A. Box is Based in Northern California and its Witnesses and Documents are Located In Northern California. ..................................................................2

    B. Titanide's Nominal Contacts With The Eastern District Of Texas. ....................3

    C. Third Parties Likely To Possess Relevant Documents And Information Are Located In California. ..................................................................4

III. ARGUMENT ..........................................................................................................5

    A. Venue Is Proper In The Northern District Of California. ....................................6

    B. The Private-Interest Factors Overwhelmingly Support Transfer To The Northern District Of California. ..................................................................7

        1. Access To Sources Of Proof Is Easier In California. ..............................7

        2. Unwilling Witnesses Are Subject To Compulsory Process In California. ..................................................................9

        3. The Cost Of Attendance For Willing Witnesses Weighs In Favor Of Transfer. ..................................................................10

        4. Transfer Would Be Inexpensive, Expeditious, And Would Promote Judicial Economy ..................................................................11

    C. The Public-Interest Factors Support Transfer To The Northern District Of California. ..................................................................12

        1. The Administrative Difficulties From Court Congestion Is Neutral. ....12

        2. The Local Interest Weighs In Favor Of The Transferee District. ..........12

        3. Familiarity With The Law And Problems With Conflict Of Laws Do Not Factor In This Transfer Analysis. ..................................................13

    D. Titanide's Choice Of Venue And Its Efforts To Manufacture A Connection With Texas Are Not Entitled To Any Weight. ..................................................14

IV. CONCLUSION ..................................................................................................15

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*ATEN Int'l Co. v. Emine Tech. Co.*,
    261 F.R.D. 112 (E.D. Tex. 2009)..................................................................................................8

*Balthaser Online, Inc. v. Kimberly-Clark Corp.*,
    2011 WL 1526964 (E.D. Tex. Apr. 20, 2011) ...........................................................................10

*Brackett v. Hilton Hotels Corp.*,
    619 F. Supp. 2d 810 (N.D. Cal. 2008) .........................................................................................9

*Droplets, Inc. v. Amazon.com, Inc.*,
    No. 2:11-CV-392, Order, Dkt. 136, slip op. at 11 (E.D. Tex. June 27, 2012)....................11, 12

*EON Corp. IP Holdings, LLC v. Sensus, USA, Inc.*,
    2012 WL 122562 (E.D. Tex. Jan. 9, 2012)..................................................................................8

*Hertz Corp. v. Friend*,
    130 S. Ct. 1181, 1195 (2010).......................................................................................................6

*In re Biosearch Techs., Inc.*,
    2011 WL 6445102 (Fed. Cir. Dec. 22, 2011) ..............................................................................8

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009)........................................................................................ *passim*

*In re Microsoft*,
    630 F.3d 1361 (Fed. Cir. 2011)..................................................................................................14

*In re Morgan Stanley*,
    417 Fed. App'x 947, 949, 2011 WL 1338830 (Fed. Cir. Apr. 6, 2011) ....................................11

*In re Nintendo Co.*,
    589 F.3d 1194 (Fed. Cir. 2009)..................................................................................................14

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008)..................................................................................................13

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ("*Volkswagen I*")....................................................................6, 10

*In re Volkswagen of America, Inc.*
    545 F.3d 304 (5th Cir. 2008) *("Volkswagen II")* ........................................................5, 6, 7, 13

*In re Zimmer Holdings, Inc.*,
    609 F.3d 1378 (Fed. Cir. 2010)..............................................................................................6, 14

*Innovative Global Sys. LLC v. OnStar, LLC*,
   No. 6:10-cv-574, Memorandum Opinion & Order, Dkt. 156,
   slip op. at 12-13 (E.D. Tex., Feb. 14, 2012) ...................................................................11

*Large Audience Display Sys., LLC v. Tennman Prods., LLC*,
   2011 WL 1235354 (E.D. Tex. Mar. 20, 2011) .................................................................9

*Network Prot. Scis., LLC v. Juniper Networks, Inc.*,
   2012 U.S. Dist. LEXIS 7575 (E.D. Tex. Jan. 23, 2012) .................................................10

*Network Protection Services, LLC v. Juniper Networks, Inc.*,
   2012 WL 194382 (E.D. Tex. Jan. 23, 2012) ...................................................................8

*Optimum Power Solutions LLC v. Apple, Inc.*,
   794 F. Supp. 2d 696 (E.D. Tex. 2011) ............................................................................8

*Orinda Intellectual Props. USA Holding Group, Inc. v. Sony Corp.*,
   2009 WL 3261932 (E.D. Tex. Sept. 29, 2009) ...............................................................13

*Regent Mkts. Group*,
   2011 WL 1135123 (E.D. Tex. March 25, 2011) ......................................................10, 13

*Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*,
   2011 WL 2937365 (E.D. Tex. July 19, 2011) .......................................................6, 7, 12

*Sipco, LLC v. Control4 Corp.*,
   WL 529336 (E.D. Tex. Feb. 8, 2011) ............................................................................11

*Stephens v. Western Pulp Prods.*,
   2005 U.S. Dist. LEXIS 40442, (E.D. Tex. Dec. 8, 2005) ................................................9

*Wireless Recognition Techs. v. A9.com*,
   2012 WL 506669 (E.D. Tex. Feb. 15, 2012) ...................................................................8

**STATUTES**

28 U.S.C. §§ 1331 and 1338(a) ................................................................................................7
28 U.S.C. § 1391(b) .................................................................................................................7
28 U.S.C. § 1404(a) .........................................................................................................1, 5, 10
Cal. Code Civ. P. § 1989 ..........................................................................................................9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 45 .....................................................................................................................9

For the convenience of the parties and witnesses, and in the interest of justice, Defendant Box, Inc. ("Box") respectfully moves to transfer this patent infringement action to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a). This action could have been filed in that District, and activities within that District are the focal point for the allegations in this matter—it is where witnesses with knowledge of the accused systems and likely prior art reside, and it is where documentary evidence is located.

## I.     INTRODUCTION

Transfer is warranted in this case because the Northern District of California is a more convenient venue for the parties and the witnesses than the Eastern District of Texas.

Box is headquartered in Los Altos, California, within the Northern District of California, and its operations are solely managed from there.  The accused systems were developed, and are maintained and managed, in Los Altos.  All of Box's knowledgeable employees are located in or near the Northern District of California.

In addition, numerous third parties who are likely to have discoverable information about relevant prior art are outside of this Court's subpoena power, but are within the subpoena power of the Northern District of California, and are located closer to the Northern District of California than to the Eastern District of Texas.  These witnesses include current and former employees of at least ten companies located in Northern and Southern California.

Although Plaintiff Titanide Ventures, LLC ("Titanide") is a Texas corporation, it is a non-practicing entity formed for the sole purpose of bringing patent suits in this District. Titanide does not appear to have any employees or operations in Texas, only a mailing address in Longview.  Titanide's sole member, Mitch Prust—the named inventor of the asserted patents—resides in Minnesota and does not appear to have any connection to Texas.  Titanide's "ephemeral" presence in Texas should therefore be afforded no weight in the transfer analysis.

1

Indeed, Mr. Prust first formed Titanide only after Judge Ward transferred a previous case brought in this District by Mr. Prust—*involving the very same patents-in-suit*—to the Northern District of California. (*See* "Declaration of Christopher Kao in Support of Box's Motion to Transfer" ("Kao Decl.") Exh. 1, filed herewith.) In that case, Judge Ward ordered transfer because the suit involved Mr. Prust, a Minnesota plaintiff, a California defendant (Apple, Inc.), and potential witnesses from across the country. (*Id*. Exh. 1, Order Granting Motion to Transfer at 1-2, No. 2:09-CV-92 (Oct. 7, 2009, E.D. Tex).)

This Court should likewise order the transfer of this case to the Northern District of California. As in Mr. Prust's prior case, the Northern District of California is a more convenient forum than the Eastern District of Texas for both the parties and the witnesses involved. The fact that Mr. Prust has since established a holding company in order to try to litigate in this District should not alter this result.

## II.   STATEMENT OF FACTS

Titanide alleges that Box's "data storage products and/or services . . . including but not limited to Box Filing Sharing Service and all reasonably similar products" infringe three related patents. (Dkt. No. 1, Complaint ¶¶ 9, 15, 21.) Box does not have a product or service called the "Box Filing Sharing Service," but Box will refer to its possibly relevant "data storage products" as the "Accused Products," for the purposes of this motion.

### A.   Box is Based in Northern California and its Witnesses and Documents are Located In Northern California.

Box is headquartered in Los Altos, California, within the Northern District of California. Box's file sharing technologies, along with associated back-end storage systems, were designed and developed, and are maintained and managed, by Box's employees in Northern California. (*Id*. ¶¶ 3, 6.) Indeed, virtually all of Box's employees are located in its Los Alto headquarters,

2

including all of Box's personnel relevant to the Accused Products.  (*See* "Declaration of Dave Adams in Support of Box's Motion to Transfer" ("Adams Decl.") ¶¶ 3, 6, filed herewith.).  Likewise, any Box documents that are relevant to this case are stored in Los Altos.  (*Id.* ¶ 5.)

In contrast, there are no Box employees with relevant knowledge of the Accused Products residing or working in Texas (*see id.* ¶ 6, 7), and there are no relevant documents relating to the Accused Products stored in Texas.  Box has no facilities in the Eastern District of Texas (or anywhere in Texas for that matter), the Accused Products were not developed in this District, and Box does not manage or operate the Accused Products from this District.  (*Id.* ¶ 7.)

### B. <u>Titanide's Nominal Contacts With The Eastern District Of Texas.</u>

Although Titanide purports to be a Texas limited liability company (Dkt. No. 1, ¶ 1), it has no apparent connection to the Eastern District of Texas.  Titanide's website does not identify a physical address for the company (Kao Decl. ¶ 4), and Titanide does not appear to have any employees or conduct any activities in Texas (*see id.* ¶ 5.).

Titanide instead appears to be operated and managed entirely from Minnesota.  Titanide's certificate of incorporation states that Titanide "shall be managed by its Members" and designates the inventor of the patents-in-suit, "Mitch Prust" of "326 Spring Street, St. Paul, Minnesota 55102," as its sole member.  (*Id.* ¶ 6; *se also* Dkt. No. 1, Exhibits A, B, and C to the Complaint.)  The attorneys at Shumaker & Sieffert, P.A., who prosecuted the applications for the patents-in-suit, are likewise located in Minnesota.  (*See id.; see also* http://www.ssiplaw.com/.)

Titanide appears to have been established solely to pursue patent infringement suits in the Eastern District of Texas.  Mr. Prust previously filed an action on the patents-in-suit against Apple, Inc., in this District on April 2, 2009.  (Kao Decl. ¶ 11.)  Six months after the Apple suit was filed, in October 2009, Judge Ward transferred the case to the Northern District of California on the grounds that "[t]he plaintiff is in Minnesota, the defendant is in the Northern District of

3

California, and the non-party witnesses" were spread across nine states, including California. (*Id*. Exh. 1 at 1.)

Mr. Prust subsequently formed Titanide as a limited liability company in Texas on November 29, 2010 and executed assignments of the patents-in-suit to Titanide shortly thereafter on December 21, 2010. (Kao Decl. ¶¶ 6-9.).

    **C.**    **Third Parties Likely To Possess Relevant Documents And Information Are Located In California.**

In addition to Box's employees located in the Northern District of California, there are numerous third parties located in the Northern District of California who are likely to have relevant information. For example, Apple, based in Cupertino, California, settled its lawsuit with Mr. Prust and may have taken a license to the patents-in-suit, which would be relevant to damages. Moreover, Apple products are identified in the "References Cited" for all of the patents-in-suit, so Apple may also have information about prior art that is relevant to invalidity. (*See* "References Cited," Dkt. Nos. 1-2, 1-3, and 1-4, Exhibits A, B, and C to the Complaint.) Other products referenced in the asserted patents include xinet.com, drive.com, @Backup, bitlocker.com, docspace.com, datahubonline.com, and netdrive.com. (*See id*.)

Thus, in addition to Apple, at least the following companies and individuals in California may have knowledge or documents related to the prior art relevant in this case:

- Xinet, Inc. is located in Berkeley, California (Kao Decl. ¶ 12), and its founder and CEO, Scott Seebass, is in the San Francisco Bay Area (*id*. ¶ 13);

- Driveway Corporation was located in San Francisco, California (i*d*. ¶ 14), and its former VP of Engineering, Philip Constantinou, is in the Bay Area (*id*. ¶ 15);

4

- Skydesk's @Backup service is now owned by Symantec, which is located in Mountain View, California (i*d*. ¶¶ 16-18), and its founder and former CTO, Fred McClain, is in San Diego, California (*id*. ¶ 19);

- Bitlocker.com was located in Palo Alto, California, (i*d*. ¶ 20), and its founder and former CTO, Andrew Voelker, is in the Bay Area (*id*. ¶ 21);

- Critical Path, Inc. of San Mateo, California (*id*. ¶ 23), is the current owner of Docspace.com, which was located in Menlo Park, California (*id*. ¶¶ 22-23));

- Datahubonline.com was located in Westlake Village, California (*id*. ¶ 24);

- NetDrive.com, Inc. was located in Los Gatos, California (*id*. ¶ 25), and its co-founder and former CTO, Steve Lewis, is in the Bay Area (*id*. ¶ 26).

Each of these California companies and their current and former employees are likely to have prior art documents and information relevant to the invalidity of the patents-in-suit.

## III.  ARGUMENT

This Court has the power to transfer this action "to any other district or division where it might have been brought" for "the convenience of the parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a). "[T]he underlying premise of §1404(a) is that courts should prevent plaintiffs from abusing their privilege [of selecting venue] under §1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)." *In re Volkswagen of America, Inc*. ("*In re Volkswagen II*"), 545 F.3d 304, 313 (5th Cir. 2008) (*en banc*).

As such, the relevant inquiries are, first, whether the action could have been brought in the Northern District of California, and second, whether the matter can clearly be resolved more conveniently in that district. *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009) (*citing In re Volkswagen II*, 545 F.3d at 315). In evaluating motions to transfer under §1404(a), the Fifth Circuit has instructed district courts to weigh a number of private and public interest

5

factors. *In re Volkswagen II*, 545 F.3d at 315; *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 2011 WL 2937365, at *1 (E.D. Tex. July 19, 2011).

Here, the private and public factors establish overwhelmingly that the case should be transferred to the Northern District of California because: (1) the relevant Box witnesses are exclusively located in that District; (2) Titanide's sole member and the named inventor is located in Minnesota, which is equally or more convenient to California than to Texas; and (3) non-party witnesses are located in the Northern District or in other districts within California. (*See* Section III.B *infra*.) The public interest factors also favor transfer because the Northern District of California has a local interest in this case. (*See* Section III.C *infra*.)

Although Titanide chose to bring this suit in the Eastern District of Texas, the plaintiff's choice of forum is "not a distinct factor in the venue transfer analysis." *In re Volkswagen II*, 545 F.3d at 315. Indeed, where the plaintiff's presence in the district is "recent, ephemeral, and an artifact of litigation," it is subject to close scrutiny "to ensure that the purposes of jurisdictional and venue laws are not frustrated by a party's attempts at manipulation." *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (*citing Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1195 (2010)). Titanide's claimed connection to this district cannot survive such scrutiny—it was formed in Texas only recently, has no employees and conducts no business here, and exists for the sole purpose of bringing patent suits. (*See* Section III.D *infra*.)

### A.   Venue Is Proper In The Northern District Of California.

A case "might have been brought" in the transferee court if that court has subject matter jurisdiction over the claims and personal jurisdiction over the defendants, and if it is a proper venue for the case. *See In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") ("determination to be made is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."). There is no question that the

Northern District of California, like this Court, has subject matter jurisdiction over Titanide's patent claims under 28 U.S.C. §§1331 and 1338(a).  Further, Box maintains its headquarters and all of its relevant personnel in the Northern District of California, and it regularly conducts business there.  (*See* Section II.A *supra*.)  Thus, Box is subject to the personal jurisdiction of that court, and venue is also proper there.  *See* 28 U.S.C. §1391(b).

### B. The Private-Interest Factors Overwhelmingly Support Transfer To The Northern District Of California.

In deciding whether to transfer this case, the Court must balance case-specific private-interest factors including:  (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.  *Rembrandt*, 2011 WL 2937365, at *1.  These private-interest factors strongly establish that the Northern District of California is "clearly more convenient" than the venue chosen by the plaintiff in this case, and that transfer is appropriate.  *In re Genentech, Inc.*, 566 F.3d at 1342 (*citing In re Volkswagen II*, 545 F.3d at 315).

#### 1. Access To Sources Of Proof Is Easier In California.

In patent cases, especially those brought by a non-practicing entity like Titanide, most of the relevant evidence is in the defendant's possession.  *In re Genentech, Inc.*, 566 F.3d at 1345 (holding that, "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.").

Here, the employees responsible for the development, maintenance, and management of Box's Accused Products, and the back-end storage systems for those products, are located in the Northern District of California.  Indeed, all of Box's employees with relevant knowledge concerning the development, operations and marketing of the accused systems reside in the

7

Northern District of California. (*See* Adams Decl. ¶ 3, 6.) In addition, there are also numerous third party witnesses likely to have relevant information located in Northern California. (*See* Section II.C *supra*.)

Accordingly, this factor weighs heavily in favor of transfer. *See Network Protection Services, LLC v. Juniper Networks, Inc*., 2012 WL 194382, at *5 (E.D. Tex. Jan. 23, 2012) (transferring case to California where the number of witnesses near there was greater than the number in Texas); *ATEN Int'l Co. v. Emine Tech. Co*., 261 F.R.D. 112, 124 (E.D. Tex. 2009) (transferring case to California because a "substantial number of potentially relevant witnesses" were located there); *Wireless Recognition Techs. v. A9.com*, No. 10-cv-00577-JRG, 2012 WL 506669, at *1-4, 6 (E.D. Tex. Feb. 15, 2012) granting transfer where key witnesses resided in and around the transferee district).

In contrast, there are no Box employees with relevant information in Texas. (*See id.* ¶ 7.) Likewise, Titanide does not appear to have any witnesses with relevant knowledge in the Eastern District of Texas, and neither Mr. Prust nor Titanide have previously identified any potential third party witnesses in Texas. These facts also support transfer. *See In re Biosearch Techs., Inc.*, No. 995, 2011 WL 6445102, at *2-3 (Fed. Cir. Dec. 22, 2011) granting motion to transfer to the Northern District of California where no witnesses were identified in the Eastern District of Texas); *Optimum Power Solutions LLC v. Apple, Inc.*, 794 F. Supp. 2d 696, 702 (E.D. Tex. 2011) (granting motion to transfer to the Northern District of California where no witnesses were identified in the Eastern District of Texas.

With regard to documentary evidence, any Box documents that are relevant to this case are stored in Los Altos, California. (Adams Decl. ¶ 5.) This also weighs in favor of transfer. *See EON Corp. IP Holdings, LLC v. Sensus, USA, Inc.*, No. 10-cv-448, 2012 WL 122562, at *2 (E.D. Tex. Jan. 9, 2012) granting motion to transfer to the Northern District of California where

majority of documents and evidence, along with several witnesses, were likely to be in that district); *Large Audience Display Sys., LLC v. Tennman Prods., LLC*, No. 09-cv-356-TJW-CE, 2011 WL 1235354, at *4 (E.D. Tex. Mar. 20, 2011) (granting motion to transfer to California where plaintiff had not alleged any source of proof in the Eastern District of Texas, and defendants alleged the bulk of the documents were in the transferee district).

### 2. Unwilling Witnesses Are Subject To Compulsory Process In California.

To the extent any of the potentially relevant third parties (*e.g.*, Apple and the third parties with prior art systems (*see* Section II.C *supra*)) are unwilling witnesses, they would be subject to the subpoena power of the Northern District of California for discovery and trial. *See* Fed. R. Civ. P. 45; *Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d 810, 821 (N.D. Cal. 2008) (explaining that "California district courts have the power to subpoena witnesses throughout the state"); Cal. Code Civ. P. § 1989. But, these witnesses are outside the subpoena power of this Court.

Accordingly, this factor favors transfer as well. *See Genentech*, 566 F.3d at 1342 (finding that where "there is a substantial number of witnesses within the subpoena power of the Northern District of California and no witness who can be compelled to appear in the Eastern District of Texas . . . the fact that the transferee venue is a venue with usable subpoena power . . . weighs in favor of transfer, and not only slightly"); *Stephens v. Western Pulp Prods.*, No. 1:04-cv-152, 2005 U.S. Dist. LEXIS 40442, at *8 (E.D. Tex. Dec. 8, 2005) ("[W]hen nearly all witnesses live outside of [the current venue]," this factor favors transfer.).

### 3. The Cost Of Attendance For Willing Witnesses Weighs In Favor Of Transfer.

Because of its geographic proximity to key witnesses, the Northern District of California is also the logical venue to reduce the costs and burden associated with witness travel. Box's headquarters and the residences of Box's likely witnesses are over 1,500 miles from Sherman, Texas. (Kao Decl. ¶ 27.) This factor strongly favors transfer. *See Volkswagen I*, 371 F.3d at 204-05 ("When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.").

Third party witnesses with relevant information are located in California, and thus would also benefit from a transfer to California. *See Balthaser Online, Inc. v. Kimberly-Clark Corp.*, No. 09-cv-188-TJW, 2011 WL 1526964, at *3 (E.D. Tex. Apr. 20, 2011) (finding cost of attendance of witnesses to favor transfer); *Regent Mkts. Group*, 2011 WL 1135123, at *3 (E.D. Tex. March 25, 2011) (finding cost of attendance favored transfer because the defendant identified three potential witnesses in the transferee district and none in Texas).

Moreover, although Titanide chose to file this action in Sherman, Texas, the Northern District of California is just as convenient for Titanide's only apparent witness, Mr. Prust, who lives in St. Paul, Minnesota.

Therefore, for the vast majority of witnesses in this case, the Northern District of California is far more convenient than the Eastern District of Texas, which "is probably the single most important factor in a transfer analysis." *See Network Prot. Scis., LLC v. Juniper Networks, Inc.*, No. 10-cv-224-JRG, 2012 U.S. Dist. LEXIS 7575, at *17 (E.D. Tex. Jan. 23, 2012) (quoting *Genentech*, 566 F.3d at 1342); *In re Genentech*, 566 F.3d at 1345 (holding that where one party is within the transferee district and another "will be traveling a great distance no

matter which venue the case is tried in, . . . the parties' convenience factor favored transfer, and not only slightly").

### 4. Transfer Would Be Inexpensive, Expeditious, And Would Promote Judicial Economy

Transfer to the Northern District of California at this early stage will promote judicial economy. Titanide filed its complaint about four and a half months ago, Box only recently filed its answer, and the parties have not yet engaged in discovery or appeared for the initial case management conference.

Although Titanide has filed other lawsuits in this District asserting infringement of the same patents, none of the other suits reached claim construction. (Kao Decl. ¶ 29). Indeed, the majority of the suits were filed at the same time as this one, and a number of the defendants in those suits have brought their own motions to transfer venue, including to the Northern District of California.

The fact that co-pending suits exist is accordingly not a basis to deny this motion. *See Sipco, LLC v. Control4 Corp.*, No. 6:10-v-249, 2011 WL 529336, at *3 (E.D. Tex. Feb. 8, 2011) (Love, M.J.) (finding no judicial economy when claim construction did not occur in prior suits); *Innovative Global Sys. LLC v. OnStar, LLC*, No. 6:10-cv-574, Memorandum Opinion & Order Dkt. 156, slip op. at 12-13 (E.D. Tex., Feb. 14, 2012) ("A co-pending suit in its infancy, however, does not increase the Court's familiarity with the patents-in-suit and therefore does not implicate judicial economy.").

Even if the existence of co-pending litigation is entitled some consideration, the Federal Circuit has "considered and rejected arguments that the preservation of judicial economy should preclude transfer to a far more convenient venue." *In re Morgan Stanley*, Misc. Nos. 962, 964, 967, 417 Fed. App'x 947, 949, 2011 WL 1338830 (Fed. Cir. Apr. 6, 2011); *see also Droplets,*

11

*Inc. v. Amazon.com, Inc.*, No. 2:11-CV-392, Order Dkt. 136, slip op. at 11 (E.D. Tex. June 27, 2012) (Craven, M.J.) (Kao Decl. Exh. 26) (transferring the case to the Northern District of California even though other cases asserting the same patents remained pending in Texas because "the considerations of judicial economy are outweighed by the location of sources of proof, the availability of compulsory process, the convenience of witnesses, and the strong local interest of the Northern District of California in this suit").

### C. The Public-Interest Factors Support Transfer To The Northern District Of California.

In addition to the private-interest factors discussed above, the Court also must consider public-interest factors in deciding a motion to transfer, including: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized disputes decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws in the application of foreign law. *See Rembrandt*, 2011 WL 2937365, at *1. These public-interest factors are either neutral or favor transfer.

#### 1. The Administrative Difficulties From Court Congestion Is Neutral.

The Eastern District of Texas and Northern District of California have two of the busiest patent dockets in the country, and have similar median times to disposition. *See Droplets, Inc.*, No. 2:11-CV-392, Order Dkt. 136, slip op. at 11. Thus, this factor is neutral. In any event, this factor is the "most speculative," and in situations where "several relevant factors weigh in favor of transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347.

#### 2. The Local Interest Weighs In Favor Of The Transferee District.

The Northern District of California has a strong local interest favoring a transfer. Box is headquartered there and Northern California is the exclusive place where the research, design,

12

development, marketing, and sales of the Accused Products occur.  *See Regent Mkts. Group*, 2011 WL 1135123, at *2 (transferring case where defendant was headquartered in transferee district and alleged infringing acts required access to a system administered there).  Moreover, virtually all of Box's 600-plus employees reside in the Northern District of California, including all the employees with information relevant to this lawsuit.  (Adams Decl. ¶¶ 3, 6.)

In contrast, the citizens of the Eastern District of Texas do not have any unique or particularly meaningful connection to this case.  To the extent the Accused Products are sold or used in the Eastern District of Texas, it is because they are sold nationwide.  (Adams Decl. ¶ 4).  The nationwide sale of any accused Box products or services, including in Texas, does not create a "local interest" in Texas.  *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (holding that "the citizens of the Eastern District of Texas have no more or less of a meaningful connection to this case than any other venue" because "the vehicles containing [defendant's] allegedly infringing headrest assemblies were sold throughout the United States"); *Orinda Intellectual Props. USA Holding Group, Inc. v. Sony Corp.*, 2009 WL 3261932, *3 (E.D. Tex. Sept. 29, 2009) ("Interests that 'could apply virtually to any judicial district or division in the United States,' such as the nationwide sale of infringing products, are disregarded in favor of particularized local interests.") (quoting *In re Volkswagen II*, 545 F.3d at 318).

### 3. Familiarity With The Law And Problems With Conflict Of Laws Do Not Factor In This Transfer Analysis.

The Northern District of California and the Eastern District of Texas are equally familiar with patent law and equally free of problems of conflict of laws in the application of foreign law.  Accordingly, these factors are neutral and do not weigh against transfer

### D. Titanide's Choice Of Venue And Its Efforts To Manufacture A Connection With Texas Are Not Entitled To Any Weight.

Titanide's choice of venue should not be given any consideration in the transfer analysis. *See In re Nintendo Co.*, 589 F.3d 1194, 1200 (Fed. Cir. 2009) ("the Fifth Circuit forbids treating the plaintiff's choice of venue as a factor in the analysis of a request to transfer"). Moreover, the Federal Circuit has instructed that courts should not "honor connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient." *In re Microsoft*, 630 F.3d 1361, 1364 (Fed. Cir. 2011).

As reviewed above, Titanide was only formed in November 29, 2010, and obtained the patents-in-suit on December 21, 2010. (*Id.* ¶¶ 6-9.) Titanide has no apparent product or service other than licensing its patents. (*See id.* ¶¶ 4-5*; see also* www.titanideventures.com/wordpress/about/* ("Titanide Ventures is an invention company. We create, patent, license and partner with others on great ideas.").) Other than a mailing address in Longview, Texas, Titanide does not appear to have any connection to this District. Indeed, Titanide's sole manager, Mitch Prust, appears to reside in Minnesota. (Kao Decl. ¶¶ 6, 10.)

Thus, Titanide's purported "presence" in the Eastern District of Texas is merely "recent, ephemeral, and an artifact of litigation" which cannot be used as a basis to manipulate venue. *See In re Zimmer Holdings*, 609 F.3d at 1381 (finding patent holder's presence in Texas to be an "attempt[] to game the system by artificially seeking to establish venue");[1] *see also In re Microsoft Corp.*, 630 F.3d at 1365 (finding that incorporating under the laws of Texas was an attempted manipulation of venue).

---

[1] Interestingly, the address for the patent holder that tried to "game the system" in *Zimmer* (911 NW Loop 281, Suite 211-38, Longview, Texas) is nearly identical to Titanide's address (911 NW Loop 281, Suite 211-30, Longview, Texas).

14

## IV. CONCLUSION

For the foregoing reasons, Box respectfully requests that this Court transfer this action to the Northern District of California.

Dated: August 7, 2012

Respectfully submitted,

By     */s/ Christopher Kao*
Christopher Kao (California Bar No. 233726)
Brock S. Weber (*Pro Hac Vice*)
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304
Tel: (650) 838-4300
CKao@perkinscoie.com
BWeber@perkinscoie.com

Harry L. Gillam, Jr. (Texas Bar No. 07921800)
GILLAM & SMITH, L.L.P.
303 South Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
gil@gillamsmithlaw.com

*Attorneys for Defendant*
*Box, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 7, 2012, a true and correct copy of the foregoing was filed electronically via the Court's CM/ECF system and therefore will be served electronically on counsel of record who have registered on CM/ECF and are deemed to have consented to service via CM/ECF under Local Rule CV-5(a).

                                                               */s/ Christopher Kao*
                                                                  Christopher Kao

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that (1) counsel has complied with the meet and confer requirement in Local Rule CV-7(h); and (2) Plaintiff Titanide Ventures, LLC opposes Defendant Box, Inc.'s motion to transfer.  Specifically, counsel for Defendant Box, Inc., Brock S. Weber, conferred with Nick Mancuso, counsel for Plaintiff Titanide Ventures, LLC, on August 6, 2012 by telephone.  Counsel for both parties conferred in good faith about the subject of this motion, but those discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

                                                               */s/ Brock S. Weber*
                                                                 Brock S. Weber